Filed 2/10/22  P. v. Stinson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079052 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. C1652157, C1506969) |
| AXEL GARY STINSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Santa Clara County, Hector E. Ramon, Judge.  Conditionally reversed and remanded with directions.

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Eric D. Share and Ashley Harlen, Deputy Attorneys General, for Plaintiff and Respondent.

In Santa Clara County Superior Court case No. C1652157, a jury convicted Axel Gary Stinson of one felony count of inflicting corporal injury on his partner and mother of his child. (Pen. Code,[1] § 273.5, subd. (a).) In a bifurcated trial, the trial court found true allegations that he suffered a prior conviction for robbery (§ 211), a serious and violent felony as defined in sections 667.5, subdivision (c) and 1192.7, subdivision (c). At the time of the incident in case No. C1652157, Stinson was on probation in Santa Clara County case No. C1506969 for convictions of felony robbery (§§ 211/212.5) and misdemeanor criminal threats (§ 422.2). Two months before Stinson's sentencing hearing, the Legislature enacted sections 1001.35 and 1001.36, putting in place a discretionary pretrial diversion program for individuals with qualifying mental disorders. (Stats. 2018, ch. 34, § 24; see *People v. Frahs* (2020) 9 Cal.5th 618, 625 (*Frahs II*).) At Stinson's sentencing, the court denied his motion to strike his prior conviction (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*); § 1385) and imposed in case No. C1652157 the low term of two years on the domestic violence conviction, doubled for the prior strike, for a total term of four years. The court revoked Stinson's probation in case No. C1506969 and imposed the midterm of four years on the robbery conviction to be served concurrently with the four-year term imposed in case No. C1652157.

On appeal, Stinson contends this court should apply section 1001.36 retroactively and conditionally remand case No. 16521557 so the trial court can assess whether he is eligible for pretrial mental health diversion. He

---

[1]    Undesignated statutory references are to the Penal Code.

contends that if we determine he forfeited the issue, then his counsel was prejudicially ineffective by failing to request an eligibility assessment before his sentencing hearing. Stinson further contends the court violated his constitutional rights to due process and the prohibition against excessive fines by imposing and executing fines and assessments without finding he had the ability to pay them. He likewise contends if we find he forfeited that claim, then his counsel was prejudicially ineffective for failing to object to the fines and assessments. As we explain, it is appropriate to conditionally reverse and remand the case with directions for the court to hold a hearing under section 1001.36 to determine whether to grant Stinson mental health diversion. (*Frahs II*, *supra*, 9 Cal.5th at p. 640.) If the court determines Stinson is ineligible for diversion, or if he is granted diversion but fails to complete his treatment program, the court shall reinstate the judgment. On remand, Stinson will have an opportunity to demonstrate whether he has an ability to pay the court-imposed fines and assessments.

FACTUAL AND PROCEDURAL BACKGROUND

Stinson does not challenge the sufficiency of the evidence of his convictions. Thus, we briefly summarize the underlying facts of his offenses. In November 2017, the victim, C.H., appeared at her friend and neighbor's door bleeding from a cut above her eyebrow and told the neighbor that Stinson—C.H.'s boyfriend and the father of their young child—had "beat the shit" out of her. C.H. later called 911 and told the operator and later a responding police officer that Stinson had repeatedly struck her in the head and face. An emergency room doctor diagnosed C.H. with a concussion.

Following his December 2017 conviction for felony domestic violence stemming from the incident, Stinson, who was on probation in case No. 1506969 for felony robbery and misdemeanor criminal threats, moved in May

3

2018 to strike his prior felony conviction. Stinson was 25 years old at the time. In his motion, he pointed to the probation officer's report in which the victim reported that on the day of the incident, Stinson had gone on a drinking binge after losing custody of his son from another relationship, and that Stinson's "main problem" was his "mental health issues." Stinson argued that at the time of the offense, he "was not medication[-]compliant" as "he was unable to fill the medication he was prescribed for his mental illnesses." "As such, [he] was suffering from deep depression and turned to drugs and alcohol to self-medicate." Stinson also argued he had experienced childhood trauma and suffered from mental illness, having been placed in foster care as an infant and having suffered physical abuse from his biological mother and her parents, as well as sexual abuse from two brothers. He argued he began engaging in self-harm after his foster father died and his older brother was murdered. Stinson argued that though he had attended community college for a time, he dropped out in 2014 and became homeless after breaking up with his girlfriend, and again turned to drugs and alcohol

4

as he was unable to refill his prescribed psychiatric medications. Stinson's motion described him as having "an extensive history of psychiatric illness."[2]

Stinson reported to the probation officer that he had been diagnosed in the past with ADHD, bipolar II disorder, schizophrenia, and borderline

[2] Stinson wrote in his *Romero* motion: "In 1999, when Mr. Stinson was only six (6) years old, he received his first psychiatric treatment. Mr. Stinson was diagnosed with ADHD, depression, and possible bipolar and post-traumatic stress disorder. As a result of his diagnoses, Mr. Stinson was found eligible for placement in special education due to hyperactivity, aggression, conduct problems, depression, atypicality, and attention [*sic*]. In 2001, at age eight (8), Mr. Stinson reported that he had been experiencing auditory hallucinations as far back as he could remember. Mr. Stinson was diagnosed with psychotic disorder and schizoaffective disorder and prescribed anti-psychotic medication. In 2005, Mr. [Stinson] continued to meet the qualifications for special education, receiving assistance in the categories of specific learning disability, serious emotional disturbance, and other health impaired. [¶] When Mr. Stinson turned 18, he was taken off juvenile probation supervision, thereby losing his access to resources and his prescribed medications. While Mr. Stinson engaged in drinking as a minor, his relationship with alcohol turned abusive after Mr. Stinson turned 18. Mr. Stinson stated he began drinking every day, and by age 23, his drinking caused him to lose visitation rights with his son. Mr. Stinson first turned to marijuana at age 15, but his relationship with marijuana also turned abusive after he turned 18. When Mr. Stinson first turned to marijuana, he was using to alleviate his mental health symptoms. As the years progressed, however, Mr. Stinson began to engage in heavy narcotic and alcohol abuse, including experimenting with methamphetamine and ecstasy. Due to his psychiatric condition, as well as the childhood trauma he endured, Mr. Stinson attempted suicide three (3) times. At age 17, Mr. Stinson attempted to hang himself while at a group home. At age 18, he again attempted suicide while suffering from homelessness. As recently as January 25, 2016, Mr. Stinson attempted to hang himself for a third time while at the main jail. Mr. Stinson's psychiatric history has also led to several [Welfare and Institutions Code section] 5150 holds at Valley Medical Center. In addition to his suicide attempts, Mr. Stinson also engaged in self-harm. Mr. Stinson indicated that he 'cuts' when he feels overwhelmed, sad, or guilty. Mr. Stinson described the sensation as a 'reset button' when things feel out of control."

personality disorder. He reported being hospitalized as a juvenile, undergoing a three-day hold in January 2015, and twice attempting suicide by hanging, the latest of which occurred while he was in custody in November 2016. He reported attending a foster youth mental health program from 2011 to 2015. The probation officer contacted a county mental health representative, who reported Stinson's psychological diagnosis as "unspecified [m]ood disorder and cannabis abuse." She reported he had been prescribed Trazodone and Trileptal, and was compliant with his medications. The probation officer acknowledged Stinson had "struggled with mental health and substance abuse issues . . . ."

During arguments on Stinson's *Romero* motion, Stinson's counsel explained that Stinson did not seek to use his drug and alcohol abuse in conjunction with his mental health issues as an excuse, but to explain what brought him before the court. His counsel raised the court's drug treatment and mental health treatment programs and pointed out Stinson was diagnosed with mental health issues at age six, stating, "If people in Mr. Stinson's position with his background and his mental health issues were meant to be successful on regular adult probation then that treatment court would not exist. That specialized attention would not exist. It exists for people like Mr. Stinson." Counsel stated that Stinson "remained unmedicated for a majority if not all of the time leading up to the date of this offense." She asked the court to consider putting Stinson on probation in the drug and mental health treatment courts in part so he could "become medication-complaint, . . . [and] have access to medication and people who will help him get that medication . . . ." The trial court eventually denied Stinson's request to strike his prior conviction.

6

Stinson was sentenced on August 30, 2018.  The next day he filed this appeal.

## DISCUSSION

I. *Request for Mental Health Diversion Under Section 1001.36*

Effective June 27, 2018, after Stinson's conviction and about two months before his sentencing hearing, the Legislature enacted sections 1001.35 and 1001.36, creating a pretrial mental health diversion program. (§§ 1001.35, 1001.36, added by Stats. 2018, ch. 34, § 24; see *Frahs II, supra,* 9 Cal.5th at p. 626.)  Those sections authorize pretrial diversion for defendants suffering from a diagnosed and qualifying "mental disorder [that] was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)), provided the defendant meets "all of the requirements" specified in that subdivision.  (*Id.,* subd. (b)(1)(A)-(F).)[3]

Qualifying mental disorders can be schizophrenia, bipolar disorder, and posttraumatic stress disorder, but not, for example, antisocial personality disorder, borderline personality disorder or pedophilia.  (§ 1001.36, subds. (a), (b)(1)(A); *Negron v. Superior Court* (2021) 70 Cal.App.5th 1007, 1014.) "Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert.  In opining that a defendant suffers from a qualifying disorder, the qualified mental health expert may rely on an examination of the defendant, the

[3]    "The stated purpose of the diversion statute 'is to promote all of the following:  [¶]  (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.  [¶]  (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings.  [¶]  (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' "  (*Frahs II, supra,* 9 Cal.5th at p. 626.)

defendant's medical records, arrest reports, or any other relevant evidence."
(§ 1001.36, subd. (b)(1)(A).)

" '[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) The eligibility criteria are:

"(A) The court is satisfied that the defendant suffers from a [qualifying] mental disorder . . . .

"(B) The court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense . . . .

"(C) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment.

"(D) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . .

"(E) The defendant agrees to comply with treatment as a condition of diversion.

"(F) The court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (b)(1)(A-F).)

Under section 1001.36, the court may consider the defendant's ability to establish eligibility for mental health diversion "[a]t any stage of the

8

proceedings." (§ 1001.36, subd. (b)(3).) Mental health diversion is available "at any point in the judicial process from the point at which the accused is charged until adjudication . . . ." (§ 1001.36, subd. (c).) If a defendant qualifies for diversion and performs satisfactorily in diversion, the court dismisses the charges against the defendant that were the subject of the criminal proceedings at the time of the initial diversion. (§ 1001.36, subd. (e).) " '[T]he arrest upon which the diversion was based shall be deemed never to have occurred.' " (*Frahs II*, *supra*, 9 Cal.5th at p. 627.)

Stinson asks this court to conditionally remand his matter so the lower court can assess whether he is eligible for mental health diversion under this scheme. Though Stinson's counsel did not seek diversion at his sentencing hearing, Stinson contends his claim is cognizable and not forfeited because the relevant law changed so unforeseeably one month after his sentencing hearing—when this court in *People v. Frahs* (2018) 27 Cal.App.5th 784 (*Frahs I*) applied the law retroactively—that it was unreasonable to expect his trial counsel to have anticipated its application to a case where a defendant exercised his or her right to a jury trial or was convicted. He argues that to the extent we find the claim forfeited, his counsel was prejudicially ineffective for failing to ask for mental health diversion.

The People acknowledge that Stinson may have one or more qualifying mental health disorders. They also acknowledge that the California Supreme Court in *Frahs II*, *supra*, 9 Cal.5th 618 held that a defendant whose case is not final may be entitled to a limited conditional remand as Stinson requests, but they argue Stinson forfeited the claim by failing to request it below at his sentencing hearing. According to the People, this court's opinion in *Frahs I* on retroactivity did not change the law, and it was not an interpretation that was contrary to apparently prevalent contemporaneous interpretations (see

9

*People v. Black* (2007) 41 Cal.4th 799, overruled on other grounds by *Cunningham v. California* (2007) 549 U.S. 270) that would permit this court to conclude it would have been unforeseeable to his counsel.  They also argue Stinson's counsel did not act unreasonably because there is no evidence Stinson's mental health disorders "substantially contributed" to his criminal conduct.  (§ 1001.36, subd. (b)(1)(B).)

A defendant may forfeit a right in a criminal case by failing to timely assert the right before the tribunal with jurisdiction to determine it.  (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.)  "However, neither forfeiture nor application of the forfeiture rule is automatic.  [Citation.]  Competing concerns may cause an appellate court to conclude that an objection has not been forfeited.  [Citations.]  Similar concerns may also cause an appellate court to refrain from applying the forfeiture bar."  (*People v. McCullough* (2013) 56 Cal.4th 589, 593.)  We decline to find a forfeiture under these circumstances, where section 1001.36 was enacted two months before Stinson's sentencing hearing, and this court had not yet decided *Frahs I*, *supra*, 27 Cal.App.5th 784.  Nothing in the record indicates the parties or court were aware of the newly enacted statute, or that Stinson would be entitled to seek pretrial diversion under it.  The statute's plain language is ambiguous as to whether a defendant who has already been convicted but not yet sentenced is entitled to seek diversion under its provisions.  Courts generally decline to apply the forfeiture rule to a right derived from recent, unanticipated changes to the law.  (See *People v. Edwards* (2013) 57 Cal.4th 658, 704-705; *People v. Black*, *supra*, 41 Cal.4th at p. 810; *People v. Turner* (1990) 50 Cal.3d 668, 703.)

Further, Stinson's counsel during his *Romero* motion asked the court for a disposition that would take into account Stinson's need for mental

health treatment. It is difficult to conclude Stinson's counsel relinquished the right to seek the relief provided by the statutes. Counsel's failure to raise section 1001.36 is excusable, and thus we decline to apply the rule of forfeiture.[4]

We further conclude Stinson is entitled to request a mental health diversion hearing with respect to both cases. In case No. C1506969, when Stinson was put on probation, imposition of his sentence was suspended. When a trial court suspends imposition of sentence, it does not pronounce a judgment, and a defendant is placed on probation without a judgment pending against him or her. (*People v. Chavez* (2018) 4 Cal.5th 771, 781.) The probation order is considered to be a final judgment only for the "limited purpose of taking an appeal therefrom." (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796.) The judgment in that case was not considered final for purposes of Stinson's ability to take advantage of ameliorative statutory amendments. (See *People v. McKenzie* (2020) 9 Cal.5th 40, 45-46 [convicted defendant placed on probation after imposition of sentence is suspended who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence, because "defendant's ' "criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it" ' "].)

---

[4] Even if we held Stinson technically forfeited this claim by not requesting mental health diversion in the trial court, we would elect to consider it on the merits. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887 [an appellate court may review a forfeited claim]; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["[a]n appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider forfeited claims to forestall ineffective assistance of counsel arguments]; *People v. Vega* (2015) 236 Cal.App.4th 484, 495 [same].)

11

Neither of Stinson's criminal proceedings had reached finality when section 1001.36 was enacted. Thus, he may seek retroactive application of its ameliorative provisions. *Frahs II* held "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs II*, *supra*, 9 Cal.5th at p. 640.) The record shows Stinson—who reported diagnoses, among others, of bipolar II disorder and schizophrenia— appears to meet this requirement, and the People do not argue otherwise.

While the People argue the record contains no evidence showing whether the "disorder was a significant factor in the commission of the charged offense" (§ 1001.36, subd. (b)(1)(B)), evidence of Stinson's mental health disorders is sufficient to order that his case be conditionally reversed and remanded. On remand, Stinson will have the burden to establish eligibility under all applicable provisions of section 1001.36. If the lower court finds the statutory prerequisites are met, it may grant relief as authorized by the statute. (§ 1001.36, subd. (e).) If it finds Stinson is ineligible or unsuitable for diversion, his conditionally reversed conviction and sentence shall be reinstated. (*Frahs, supra*, 9 Cal.5th at pp. 640-641.)

## II. *Imposition of Fines and Assessments*

At sentencing, the trial court ordered Stinson to pay a $300 restitution fine under section 1202.4, subdivision (b)(2), and imposed but suspended an additional $300 restitution fine under section 1202.45. It ordered Stinson to pay a $40 court security fee (§ 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $129.75 criminal justice administration fee (Gov. Code, § 29550.1). Stinson now contends the court violated his federal and

12

state constitutional rights by imposing the fines and assessments without first determining, under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, that he had the ability to pay them.

In light of our conclusion that Stinson is entitled to a mental health diversion hearing under section 1001.36, we need not decide the issue. Stinson may, if he chooses, on remand raise his constitutional challenge to the fines and assessments imposed by the court. Stinson may also address whether under the plain language of Government Code section 6111, subdivision (a), the unpaid balance of the criminal justice administration fee as of July 2, 2021, is unenforceable and uncollectible, and whether the portion of the judgment imposing such costs must be vacated. (Gov. Code, § 6111, subd. (a);[5] see *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 950-954.)

## DISPOSITION

The judgment is conditionally reversed and the matter remanded for the trial court to conduct a mental health diversion eligibility hearing pursuant to section 1001.36 and *Frahs II, supra*, 9 Cal.5th 618, and also to permit Stinson to challenge imposition of and his ability to pay the court-imposed fines and assessments. If the court finds Stinson meets the eligibility requirements of section 1001.36, the court may grant relief as provided in the statute.

---

[5] Assembly Bill No. 1869 added Government Code section 6111, which provides that "the unpaid balance of any court-imposed costs pursuant to [Government Code] Section 27712, subdivision (c) or (f) of [Government Code] Section 29550, and [Government Code] Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).)

In the event Stinson is found eligible for mental health diversion and successfully completes a diversion program, the court shall dismiss the charges against him.  If the court finds he does not meet the requirements of section 1001.36, or if he fails to successfully complete the diversion program, then his conviction and sentence shall be reinstated, subject to any decision under Government Code section 6111.  We express no views about whether Stinson will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.